**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| HAYDEN AI TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> FLEETMIND SEON SOLUTIONS INC., <br><br> Defendant. | CIVIL ACTION NO. 2:25-cv-00528 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Hayden AI Technologies, Inc. ("Hayden" or "Plaintiff"), by and through its undersigned attorneys, files this Complaint against Defendant Fleetmind Seon Solutions Inc. ("Fleetmind Seon" or "Defendant"), and alleges, upon knowledge with respect to its acts and upon information and belief as to other matters, as follows:

### Nature of the Action

1.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on Defendant's infringement of Hayden's U.S. Patent No. 11,689,787 (the "'787 Patent"), titled "Behind the windshield camera-based perception system for autonomous traffic violation detection."

2.      Hayden is a leader in artificial intelligence ("AI") and machine learning technologies. Bringing together experts in AI, computer vision, data science, transportation and government technology, Hayden designs and deploys solutions to real-world problems facing governments and businesses.

3.     Through sustained, substantial investment in research and development, Hayden has developed an industry-leading mobile perception platform that enhances safety, efficiency, and sustainability. Among other things, Hayden's platform can be used to help municipalities maintain access to, and safety of, bus lanes and bus stops by automating the identification and processing of traffic violations. The efficacy of Hayden's platform has helped it become the leading provider of mobile automated bus lane and bus stop enforcement systems in the United States. Novel components of Hayden's platform include an interior mounted license plate recognition ("LPR") camera assembly, which practices the subject matter of the '787 Patent.

4.     Defendant Fleetmind Seon, in active coordination with its affiliates—Safe Fleet Acquisition Corp. ("Safe Fleet"), Seon Holdings Corp., Seon Design (USA) Corp. ("Seon US"), COBAN Technologies, Inc. ("Coban"), and Seon Systems Sales Inc. ("Seon Systems") (collectively, "Safe Fleet Company Group") has infringed and/or continues to infringe the '787 Patent by making, using, offering for sale, and/or importing an infringing LPR camera assembly for mounting an LPR camera on the interior of buses ("Interior Bus Camera Assembly") and "ClearLane" automated bus lane enforcement ("ABLE") system incorporating the Interior Bus Camera Assembly.

5.     Hayden brings this action in order that this Court enjoin Fleetmind Seon's infringement of the '787 Patent and/or otherwise relieve and redress the injury to Hayden caused by Fleetmind Seon's infringement.

## The Parties

6.     Plaintiff Hayden AI Technologies, Inc., is a Delaware corporation with its principal place of business at 460 Bryant Street, San Francisco, California.

7.      On information and belief, Defendant Fleetmind Seon Solutions Inc. is a Canadian corporation with a principal place of business in Coquitlam, BC, Canada. On information and belief, Fleetmind Seon is a subsidiary of Safe Fleet Acquisition Corp., a Delaware corporation.

8.      On information and belief, Fleetmind Seon was the result of Safe Fleet's acquisition and subsequent combination of three Canadian companies in or around 2016—Seon Design Inc., Fleetmind Solutions Inc., and Fleetmind Holdings Inc.—resulting in Defendant Fleetmind Seon.

9.      Fleetmind Seon engages in product development, marketing, importation, and sales operations in active coordination with affiliate entities within the Safe Fleet Company Group, including without limitation, the Interior Bus Camera Assembly used for the ClearLane system.

10.     For example, on information and belief, Fleetmind Seon works in concert with Seon US, a Washington corporation and subsidiary of Seon Holdings Corp. (also a Washington corporation), which like Fleetmind Seon, is also a subsidiary of Safe Fleet. On information and belief, Seon US operates as Fleetmind Seon's US sales arm for, *inter alia*, the infringing Interior Bus Camera Assembly and the resulting ClearLane system incorporating the infringing Interior Bus Camera Assembly.

11.     On information and belief, Fleetmind Seon also works in concert with Coban, a Texas corporation within the Safe Fleet Company Group, with its principal place of business in Houston, Texas.

12.     On information and belief, Fleetmind Seon also works in concert with Seon Systems, another Canadian company within the Safe Fleet Company Group, with its principal place of business in Coquitlam, Canada.

13.     On information and belief, Fleetmind Seon actively coordinates with Seon US, Coban, Seon Systems, and/or Safe Fleet employees in Houston, Texas in relation to Safe Fleet's

Passenger Transportation, Law Enforcement & Waste ("PTLW") product lines, which include the infringing Interior Bus Camera Assembly and the resulting ClearLane System incorporating the infringing Interior Bus Camera Assembly. On information and belief, Fleetmind Seon also has employees based in Houston, Texas.

14.     On information and belief, Fleetmind Seon actively coordinates with Seon US, Coban, Seon Systems, and/or Safe Fleet to develop, make, use, offer for sale, and/or import the Interior Bus Camera Assembly and the resulting ClearLane System, or components thereof, into the United States, as well as to supply in or from the United States components of the Interior Bus Camera Assembly.

15.     On information and belief, Seon US, Seon Systems, Coban, and/or Safe Fleet are also the alter ego of Fleetmind Seon. On the safefleet.net website, Defendant states that "Fleetmind is now Safe Fleet." *See* https://www.safefleet.net/fleetmind/ (below):



16.     Likewise, the safefleet.net website advertises that "Seon" (a registered trademark of Fleetmind Seon) along with various other Safe Fleet brands are part of "ONE INTEGRATED SAFETY PLATFORM." *See* https://www.safefleet.net/seon/. The website claims that it "bring[s] together best-in-class brands to give fleets of every type **one-stop access** to customized, integrated and intelligent safety solutions." *See* https://www.safefleet.net/brands/ (noting "Coban," "Fleetmind" and "Seon."). Additionally, a June 6, 2022 press release published on the safefleet.net website states that "Seon" (a trademark owned by Fleetmind Seon) was changing "our name" to "Safe Fleet." https://www.safefleet.net/blog/we-are-changing-our-name-to-safe-fleet/.

17.     In official responses to government agencies Fleetmind Seon represents itself as a family of brands that includes "Seon," "Coban," "Fleetmind," and "Safe Fleet."



*See* https://www.topekametro.org/uploads/ytYNrW8m/Bid-SafeFleetMobileViewandSeon.pdf

18.     On information and belief, Seon US, Seon Systems, Coban, Safe Fleet and/or Fleetmind Seon employees act as representatives for multiple brands of the Safe Fleet Company Group. For example, Dan Pulskamp represents himself as VP of Transit Bus and Rail of Seon US. Mr. Pulskamp also has direct oversight of the MobileView brand (another Safe Fleet company). However, Mr. Pulskamp also represents himself as the VP of Transit Bus and Rail for "Safe Fleet" and uses an @safefleet.net email address. *See* https://www.metro-magazine.com/10175956/safe-fleets-new-system-aims-to-clear-lanes-improve-ridership; https://www.safefleet.net/sales-support/#transit. Moreover, public documents show that Mr. Pulskamp reports to Tom Gill, who (on information and belief) is a senior executive at Fleetmind Seon and former director of Seon Design Inc. prior to its amalgamation into Fleetmind Seon. *See* https://www.romcorp.com/fleetmind-vice-president-martin-demers-to-retire-safe-fleet-executive-

tom-gill-to-take-on-leadership-role/. On information and belief, Mr. Gill signs contracts and other binding agreements on behalf of Fleetmind Seon.



See https://www.topekametro.org/uploads/ytYNrW8m/Bid-SafeFleetMobileViewandSeon.pdf

19.    Mr. Gill also supervises Ms. Susan Gill. Ms. Gill publicly signs contracts on behalf of "Seon Systems Sales Inc. (dba Safe Fleet)"—*i.e.*, Seon Systems. *See* https://www.tips-usa.com/assets/Vendorspdf/230202_CONTRACT_Security_Safe_Fleet.pdf. Mr. Curtis Smith also reports to Mr. Gill. In the same document Mr. Curtis signs on behalf of "Safe Fleet Bus & Rail," and also represents Seon Systems.

20.    Accordingly, the employees and entities associated with Seon US, Seon Systems, Coban, Safe Fleet and/or Fleetmind Seon are often comingled. For example, in an official communication to the Topeka Metropolitan Transit Authority, three entities "Safe Fleet," "MobileView," and "Seon" were together referred to as Safe Fleet Bus & Rail. *See* https://www.topekametro.org/uploads/ytYNrW8m/Bid-SafeFleetMobileViewandSeon.pdf. However, that same document indicates that the relevant IP and copyrights were held by

"FleetMind Seon Solutions Inc., a division of Safe Fleet." Other IP notices refer to a "Seon Inc."

entity.

21.    In a contract with a "government purchasing cooperative and Department of Texas

Region 8 Education Service Center" Seon Systems represented that:

> Safe Fleet's video and telematics products and services are sold and delivered under
> a variety of brand names, including Safe Fleet®, Seon®, FleetMind® and
> MobileView®. These brands and associated businesses are owned and operated
> through Safe Fleet Acquisition Corp. and its wholly-owned subsidiaries, including
> FleetMind Seon Solutions, Inc., Seon Systems Sales, Inc. and Seon Design (USA)
> Corp.

https://www.tips-usa.com/assets/Vendorspdf/230202_CONTRACT_Security_Safe_Fleet.pdf

22.    Accordingly, "Safe Fleet's video and telematics products and services," such as the

accused products are provided by a set of "associated businesses" that includes Defendant

Fleetmind Seon, along with Safe Fleet, Seon Systems, and Seon US.

23.    On information and belief, Fleetmind Seon, Seon US, Seon Systems, Coban, and

Safe Fleet comingle their financial assets and accounts. Moreover, Fleetmind Seon, Seon US, Seon

Systems, Coban, and Safe Fleet share office space and other office resources, including employees.

For example, many employees of the above entities use safefleet.net emails. As another example,

both Fleetmind Seon and Seon Systems operate out of the same office in Coquitlam, Canada. On

information and belief, Fleetmind Seon, Seon US, Seon Systems, Coban, and Safe Fleet also cross-

sell their products.

24.    On information and belief, Fleetmind Seon directs and controls the activities of

Seon Systems, Seon US, and Coban (as discussed above).

25.    On information and belief, Fleetmind Seon, Seon US, Coban, and Safe Fleet lack

independent management and board meetings. On information and belief, management of the

companies occurs under the "Safe Fleet" umbrella rather than through each company

independently. For example, Brian Kupchella is listed as a director of Fleetmind Seon, Seon Systems, and Coban. Brian Kupchella is also listed as the CEO of Seon US, Safe Fleet, and Clarience Technologies (the parent company of all Safe Fleet entities). *See* https://clariencetechnologies.com/team/brian-kupchella/. On official business records, Mike Schulte is listed as the President of Coban, but Mr. Schulte is also the President of "Safe Fleet." *See* https://www.safefleet.net/news-releases/safe-fleet-appoints-mike-schulte-as-president/. Publicly available information indicates that the management of all Safe Fleet companies (including Fleetmind Seon, Seon Systems, Seon US, Coban, and Safe Fleet) are comingled.

26.    Moreover, publicly available corporate disclosure statements and corporate registration confirm that all of Fleetmind Seon, Seon US, Seon Systems, Coban, and Safe Fleet are wholly owned by Safe Fleet Holdings LLC, which is owned by Swordfish Parent, Inc., which is owned by Swordfish Intermediate Holdings, Inc., which is owned by ECCO Holdings Corp., which is owned by Truck-Lite Co., LLC, which is owned by Clarience Technologies, LLC.

27.    On information and belief, Fleetmind Seon may actively coordinate with additional entities in the Safe Fleet Company Group, who may also act as an agent and/or alter ego of Fleetmind Seon by way of comingling of assets and operations, and inattention to corporate formalities.

**Jurisdiction and Venue**

28.    This Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claim herein arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271.

29.    This Court has specific personal jurisdiction over Fleetmind Seon because it has engaged and continues to engage in, on its own and/or through its affiliated company agents,

substantial activities within the State of Texas giving rise to Hayden's claim for patent infringement.

30.     For example, on information and belief, Fleetmind Seon has imported camera assembly components into the State of Texas for the express purpose of assembling and distributing the infringing Interior Bus Camera Assembly and the resulting ClearLane System.

31.     On information and belief, Fleetmind Seon has employees in Houston, Texas. On information and belief, these employees work on the development, manufacture, importation, and/or use of the infringing Interior Bus Camera Assembly and the resulting ClearLane System.

32.     On information and belief, Fleetmind Seon works in concert with Safe Fleet, Seon US, Seon Systems, and/or Coban employees in Houston, Texas on the development, manufacture, importation, and/or use of the infringing Interior Bus Camera Assembly and the resulting ClearLane System. On information and belief, one or more of these employees purport to represent "Seon" or Fleetmind Seon.

33.     Moreover, as explained above, the operations of Seon US, Seon Systems, Coban, Safe Fleet and/or Fleetmind Seon are comingled. Therefore, the activities of Seon US, Seon Systems, Coban, and Safe Fleet are attributable to Fleetmind Seon. Additionally, at least Seon US, Seon Systems, and Coban act as agents for Fleetmind Seon. For example, as explained above, Mr. Gill (a senior executive from Fleetmind Seon) directs the operations of at least Seon US and Seon Systems. On information and belief, Mr. Gill also directs the operations of Coban.

34.     Thus, Fleetmind Seon has established minimum contacts with the State of Texas and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Fleetmind Seon, through its substantial activities in the development, manufacture, importation, and distribution of the infringing Interior Bus Camera Assembly and the resulting

ClearLane System in the State of Texas, has purposefully directed its activities to the State of Texas in a manner that gives rise to Hayden's patent infringement claims such that assertion of personal jurisdiction in the State of Texas is reasonable and fair.

35.    Indeed, Fleetmind Seon regularly does or solicits business, engages in other persistent courses of conduct within and derives revenue from services provided in Texas. On information and belief, Fleetmind Seon has and continues to advertise, offer for sale, and sell its Waste & Recycling products within the State of Texas. *See, e.g.*, www.safefleet.net/brands/fleetmind/; www.wastetodaymagazine.com/article/knight-watch/ (Fort Worth, TX); services.austintexas.gov/edims/document.cfm?id=396558 (Austin, TX).

36.    Fleetmind Seon also directs its customers to return their Waste & Recycling products to Safe Fleet offices located in Missouri City, Texas. *See* www.safefleet.net/support/waste-recycling-support/.

37.    In the alternative, to the extent Fleetmind Seon objects to personal jurisdiction in the State of Texas, this Court has personal jurisdiction over Fleetmind Seon pursuant to Federal Rule of Civil Procedure 4(k)(2) because Hayden's claims arise under federal law and Fleetmind Seon's substantial activities within the United States as a whole establish sufficient minimum contacts and purposeful availment that satisfies any constitutional due process concerns.

38.    For example, not only does Fleetmind Seon develop and actively coordinate the importation, assembly, and distribution of the infringing Interior Bus Camera Assembly and the resulting ClearLane System, Fleetmind Seon is also the owner of the U.S. registered trademark SEON, which, upon information and belief, is one of the trademarks used for marketing the infringing Interior Bus Camera Assembly and the resulting ClearLane System, among other products, throughout the United States. Fleetmind Seon also owns at least five other U.S. registered

trademarks to support its marketing activities in the United States, including several relating to the use of vehicle camera technology, including BUDDY THE SEON SAFETY BEAR, TROOPER, EXPLORER, VMAX, and SMART-REACH.

39.    In addition to actively securing U.S. trademarks for its commercial use in the United States relating to the technology at issue in this case, Fleetmind Seon also actively prosecutes U.S. patents relating to its technology development efforts in the United States, including those relating to LPR cameras for ABLE systems (the same technology related to this patent infringement action), including U.S. Patent Application Publication 2024/0071109 (Computer-based tools and techniques for vehicle detection).

40.    Venue is proper in this District is under 28 U.S.C. § 1391(c) because Fleetmind Seon is a foreign corporation subject to suit in any district.

41.    Venue is also convenient in this District, and in any event, no less convenient to the parties than any other district Fleetmind Seon may strategically prefer. First, this Court has absolute subpoena power over relevant party- and third-party witnesses. In particular, on information and belief, relevant third-party witnesses, including at least one former Safe Fleet employee, reside near this District and within absolute subpoena power of this Court. Further, on information and belief, many, if not most, Fleetmind Seon, Safe Fleet, Seon US, Seon Systems, and/or Coban employees who are likely to have relevant knowledge regarding the development of the Interior Bus Camera Assembly and infringing acts either reside within the Court's absolute subpoena power and closer to this District than any other district Fleetmind Seon may strategically prefer, or reside outside of the United States.

42.    On information and belief, documents and sources of proof relevant to this case are also stored near or accessible from this District, including documents relating to the development,

manufacture, importation, and/or use of the infringing Interior Bus Camera Assembly and the resulting ClearLane System stored and/or maintained in Houston, Texas.

### Hayden's Innovative Technology

43.     Hayden was founded in 2019, with the mission of developing artificial intelligence and machine learning technologies to revolutionize how governments and businesses solve, *inter alia*, transit-related problems which theretofore existed but were, with previously available technology, difficult or impossible to fix.

44.     Presently the centerpiece of Hayden's offering is its mobile perception platform, which accurately identifies the precise location of vehicles and other objects utilizing a novel combination of AI technology and cameras mounted inside a moving vehicle. Though the mobile perception platform has many applications (*e.g.*, school buses, garbage trucks, street sanitation vehicles), pertinent to the instant action is the use of Hayden's technology to automate transit bus (*i.e.*, city bus) lane, transit bus stop, bike lane, and other no-parking enforcement (the "Hayden Automated Bus Lane Enforcement System," or, and hereafter, the "Hayden ABLE System").

45.     For years, public transit agencies have struggled with challenges caused by motor vehicles impermissibly parking in bus stops or restricted, bus-only or bike-only lanes; the implications can be far reaching.

46.     Obstructions in bus stops or lanes slow down buses, cause delays, and make it harder for transit buses to maintain an "on-time" schedule. Over time, a pattern of regular delays can decrease customer satisfaction and, ultimately, ridership.

47.     Obstruction of bus stops or lanes can pose serious safety hazards. An obstructed bus stop may, for example, prevent a passenger with a disability from accessing a bus at all. In major metropolitan areas, the sheer volume of bus stops and bus lanes makes consistent, comprehensive, human patrols unworkable.

48.    To resolve a long-felt but unmet need to improve enforcement of traffic ordinances governing bus stops and bus lanes, Hayden leveraged its expertise to devise an automated solution. Using a novel AI-powered camera system, Hayden could automatically capture and enforce these violations, while safeguarding the privacy of members of the community, with levels of accuracy and efficiency never before seen in the industry.

49.    Hayden specially designed a system that relies on a unique combination of hardware and software, that is attached to transit buses themselves, to identify and enforce bus-lane violations in lieu of relying, among other alternatives, on police or municipal parking enforcement officers to detect and notice violations. One of the novel components developed by Hayden is an interior mounted license plate recognition ("LPR") camera assembly, which overcame long-felt issues associated with installing or mounting camera systems to municipal vehicles.

50.    Installation of camera systems on the exterior of municipal fleet vehicles is often onerous and cost-prohibitive due to municipal regulations governing changes to the exteriors of such vehicles. Therefore, installation of camera systems is often limited to the interior of such municipal fleet vehicles. The interior of municipal fleet vehicles has the added benefit of protecting the equipment from the elements (*e.g.*, wind, rain, snow, etc.).

51.    However, the interior environment may supply additional challenges that are not faced through an exterior installation. One such challenge is that the windshield of a vehicle is often designed to block certain light spectrums, including infrared ("IR") light. This can be a problem when a camera system is designed to operate at night and IR lights must be used to illuminate the camera's field of view when the external environment is dark. For example, a typical municipal bus windshield can block up to 50% to 80% of IR light emitted from an IR light source.

Another challenge is that the windshield of a vehicle can also reflect both unwanted ambient light and IR light. These reflections can cause problems for the camera system.

52.    This challenge is more pronounced in fleet vehicles that carry passengers (*e.g.*, buses) where the interiors are often lit by copious amounts of interior lighting. The camera systems can also only be installed in a limited number of locations within the vehicle to avoid blocking the driver's field of view and to avoid being blocked by moveable objects such as a vehicle's windshield wipers. Moreover, camera systems often require scrupulous calibration concerning the positioning of the cameras after the system is installed in a vehicle. Therefore, there was a need for an LPR camera system that allowed an LPR camera to be mounted on the interior of a bus while eliminating the issues above.

53.    The claims of the '787 Patent address these concerns though the use of an LPR camera housing configured to mount the LPR camera housing to the interior of the carrier vehicle. An exemplary LPR camera assembly with an LPR camera housing is shown in the Figure below:



**(Exhibit A, Figure 5A)**

54.    The '787 Patent also describes a camera "skirt" that is configured to block ambient light from interfering with the camera. The skirt also prevents reflected IR light and unwanted light reflected from objects (*e.g.*, vehicles, signs, buildings) outside of the vehicle from interfering with the videos captured by the cameras. Therefore, the inventions of the '787 Patent solved several long-standing issues in the prior art.

### The '787 Patent

55.    The '787 Patent, entitled "Behind the windshield camera-based perception system for autonomous traffic violation detection," was issued by the United States Patent and Trademark Office on June 27, 2023. The '787 Patent matured from U.S. Patent Appl. No. 18/068,721, filed on December 20, 2022.

56.    The '787 Patent claims priority to Provisional Application No. 63/383,958, filed on November 16, 2022.

57.    The '787 Patent discloses, *inter alia*, an LPR camera assembly, comprising an LPR camera housing and camera skirt. A true and correct copy of the '787 Patent is attached hereto as **Exhibit A**.

58.    Hayden is the assignee of the '787 Patent.

59.    Hayden owns all right, title, and interest in and to the '787 Patent, including the right to exclude others and to enforce and recover damages for past and future infringement.

60.    The '787 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

61.    Independent Claim 1 of the '787 Patent recites:

A license plate recognition (LPR) camera assembly, comprising:
an LPR camera housing containing one or more LPR cameras configured to capture videos containing one or more license plates of one or more vehicles involved in a traffic violation event;

an LPR camera mount coupled to the LPR camera housing and configured to mount the LPR camera housing to an interior of a carrier vehicle at an angle with respect to a windshield of the carrier vehicle;

a plurality of infrared (IR) lights configured to illuminate an event scene of the traffic violation event; and

at least one LPR camera skirt coupled to and protruding outwardly from the LPR camera housing, wherein the at least one LPR camera skirt is configured to prevent reflected IR light from interfering with the videos captured by the one or more LPR cameras,

wherein the at least one LPR camera skirt comprises an outer LPR camera skirt and an inner LPR camera skirt at least partially shrouded or surrounded by the outer LPR camera skirt,

wherein the outer LPR camera skirt comprises a first outer camera skirt lateral side and a second outer camera skirt lateral side,

wherein the inner LPR camera skirt comprises a first inner camera skirt lateral side and a second inner camera skirt lateral side, and

wherein the length of at least one of the second inner camera skirt lateral side and the first inner camera skirt lateral side is determined based on an angle made by the second outer camera skirt lateral side and a windshield of the carrier vehicle.

### Defendant's Infringement of the '787 Patent

62.    On information and belief, Fleetmind Seon was the result of Safe Fleet's acquisition and combination of Seon Design Inc., Fleetmind Solutions Inc., and Fleetmind Holdings Inc. in 2016. Fleetmind Seon's business historically has been in fleet management solutions.

63.    On information and belief, Safe Fleet's current business comprises at least 24 different brands, including "Fleetmind," "Coban," and "Seon," which offer at least one or more products of services for use in or concerning school buses, fleet vehicles (*e.g.*, basic cameras, lighting products, roof hatches, and overhead luggage racks) and transit surveillance. *See* https://www.safefleet.net/brands/.

64.    On information and belief, recognizing the potential value for a product like that developed by Hayden, Fleetmind Seon (together with Safe Fleet, Seon Systems, Seon US, and Coban) has sought and continues to seek to manufacture, advertise, market, offer for sale, and sell

a product like Hayden's patented ABLE System, including Hayden's interior mounted LPR camera assembly, in an effort to directly compete with Hayden for ABLE system contracts awarded by municipal transit agencies. *See* https://datamade-metro-pdf-merger.s3.amazonaws.com/2023-0458.pdf

65.     On information and belief, rather than undertaking independent research and development to develop a competing product, Fleetmind Seon (together with Safe Fleet, Seon US, Seon Systems, and Coban) have freeloaded on Hayden's significant investment, which is marketed as "ClearLane."

66.     By its unauthorized manufacture, use, offer, sale, and/or importation of the Interior Bus Camera Assembly and the resulting ClearLane system or components thereof, Fleetmind Seon acts, alone or in concert with affiliates or other third-party entities under its control or at its instruction, in order to reap the benefits of Hayden's investment in research and development while itself incurring substantially none of the attendant costs. Fleetmind Seon's infringement, therefore, allows them to position ClearLane in direct competition with Hayden's patented system, offering a copycat product at a lower price. Fleetmind Seon's infringement also causes Hayden irreparable harm at least because Hayden and Fleetmind Seon bid on the same contracts and Hayden is forced to lower its price and increase its product offerings to outbid Fleetmind Seon. Fleetmind Seon's infringement is the kind of innovation-stifling competition that the patent laws were designed to prevent.

67.     The ClearLane ABLE System comprises an LPR camera for capturing license plates of one or more vehicles involved in a traffic violation.

68.     On information and belief, Fleetmind Seon, together with Safe Fleet and Seon US, have designed at least one variation of its ClearLane system with an LPR camera assembly

mounted, or configured to be mounted, on the inside of buses, which Fleetmind Seon, together with Safe Fleet, Seon Systems, Seon US and/or Coban, has offered for sale to at least one metropolitan transit authority since the issuance of the '787 Patent.

69.    In 2023, Los Angeles County Metropolitan Transportation Authority ("LACMTA") issued RFP No. OP48185 for an end-to-end standalone solution for an automated, camera-based enforcement system capable of detecting non-moving violations in Bus Priority Lanes and bus stop zones. On information and belief, Fleetmind Seon, Safe Fleet, Seon Systems, Seon, and Coban US prepared a response to LACMTA's RFP. *See* datamade-metro-pdf-merger.s3.amazonaws.com/operations-safety-and-customer-experience-862b53296c93.pdf.

70.    On information and belief, the ABLE system pitched to LACMTA was the ClearLane System which includes the infringing Interior Bus Camera Assembly.

71.    On information and belief, the Interior Bus Camera Assembly comprises an LPR camera and an LPR camera housing that allows the camera to capture videos containing one or more license plates of one or more vehicles involved in a traffic violation event. On information and belief, the Interior Bus Camera Assembly also includes an LPR camera mount to mount the LPR camera housing to an interior of a carrier vehicle at an angle with respect to a windshield of the carrier vehicle. The specifications of RFP No. OP48185 required that the onboard camera system be configured for installation inside of the bus.

72.    Further, materials prepared by Fleetmind Seon, Safe Fleet, Seon Systems, and Seon US for the LACMTA pitch advertise a ClearLane system with an "ALPR camera behind the windshield," *i.e.*, mounted to the interior of a bus at an angle with respect to the windshield. The LACMTA pitch materials further describe that "[w]indshield glare, reflections, blocked IR" problems are "solved by adding a carefully designed camera hood."

73.    On information and belief, the Interior Bus Camera Assembly also includes a plurality of infrared (IR) lights configured to illuminate an event scene of the traffic violation event. The specifications of RFP No. OP48185 required that the onboard camera system have infrared capabilities for nighttime and low light conditions.

74.    On information and belief, the Interior Bus Camera Assembly comprises an LPR camera skirt coupled to and protruding outwardly from the LPR camera housing to prevent reflected IR light from interfering with the videos captured by the LPR camera. Further, on information and belief, the skirt includes an outer LPR camera skirt and an inner LPR camera skirt at least partially shrouded or surrounded by the outer LPR.



75.     On information and belief, the outer LPR camera skirt of the Interior Bus Camera Assembly comprises a first outer camera skirt lateral side and a second outer camera skirt lateral side. The inner LPR camera skirt comprises a first inner camera skirt lateral side and a second inner camera skirt lateral side. Moreover, on information and belief, the length of at least one of the second inner camera skirt lateral side and the first inner camera skirt lateral side is determined based on an angle made by the second outer camera skirt lateral side and a windshield of the bus.

76.     On information and belief, Fleetmind Seon imported into the United States (specifically, the State of Texas) the Interior Bus Camera Assembly and/or components thereof, which was then assembled by Safe Fleet, Seon System, Seon US, and/or Coban for their in-person pitch and demonstration to LACMTA in or around June 2023. *See* datamade-metro-pdf-merger.s3.amazonaws.com/operations-safety-and-customer-experience-862b53296c93.pdf   ("On May 25, 2023, the PET [Proposal Evaluation Team] reconvened and determined that all three firms were within the competitive range and were invited to participate in demonstrations and interviews on June 13, 2023.").

77.     On information and belief, Fleetmind Seon, through its agents Safe Fleet, Seon US, Seon Systems and Coban, offered the infringing Interior Bus Camera Assembly and the resulting ClearLane System for sale at least on April 26, 2023, which remained an active offer until at least October 2023. On information and belief, Fleetmind Seon, Safe Fleet, Seon US, Seon Systems, and Coban actively pursued its offer for sale to LACMTA until at least October 2023.

78.     On information and belief, Fleetmind Seon, either alone or in concert with Safe Fleet, Seon US, Seon Systems, and Coban continued to offer the infringing Interior Bus Camera Assembly to other potential customers.

79.    On information and belief, Fleetmind Seon, either alone or in concert with Safe Fleet, Seon US, Seon Systems, and Coban has continued to develop and test the infringing Interior Bus Camera Assembly in the United States. Accordingly, Fleetmind Seon makes and uses the infringing Interior Bus Camera Assembly in the United States.

80.    On information and belief, Fleetmind Seon has also exported to Canada components of the infringing Interior Bus Camera Assembly, to at least use, develop, and test in Canada. On information and belief, Fleetmind Seon continued these activities in Canada with the intention of continuing to offer the infringing system for sale in the United States. Moreover, on information and belief, Fleetmind Seon supplied from the United States a substantial portion of the components of a patented invention to actively induce the combination of such components outside of the United States in a manner that would infringe the patent.

81.    Further, on information and belief, Fleetmind Seon, Safe Fleet, Seon US, Seon Systems, and Coban makes, uses, offers to sell, sells, or imports the infringing Interior Bus Camera Assembly and the resulting ClearLane System to customers or prospective customers for their use. On information and belief, Fleetmind Seon also continues to import into the United States components of the infringing Interior Bus Camera Assembly constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringing the '787 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use. The components imported by Fleetmind Seon are assembled into the infringing Interior Bus Camera Assembly and the resulting ClearLane System by Safe Fleet, Seon US, Seon Systems, Coban, and/or its customers.

82.    On information and belief, Fleetmind Seon also induces at least Safe Fleet, Seon US, Seon Systems, and Coban to infringe the '787 Patent at least because it directs Safe Fleet,

Seon US, Seon Systems, and Coban to assemble the ClearLane System in an infringing manner. Additionally, on information and belief, Fleetmind Seon directed Safe Fleet, Seon US, Seon Systems, and Coban to assemble the ClearLane System in the United States and offer it for sale to LACMTA. Fleetmind Seon, alone or in concert with Safe Fleet, Seon US, Seon Systems, and Coban also induces the infringement of its ultimate customers (metropolitan transit authorities) by installing and presenting testing systems which infringe the '787 Patent.

83.     On information and belief, Fleetmind Seon, Safe Fleet, Seon US, Seon Systems, and Coban knew of the '787 Patent since at least July 2023. On information and belief, Fleetmind Seon learned of the '787 Patent through its extensive monitoring of Hayden, its technology, and IP. Moreover, Fleetmind Seon, Safe Fleet, Seon US, Seon Systems, and Coban were aware or willfully blind to the fact that the Interior Bus Camera Assembly infringed the '787 Patent at that time, yet these entities continued their infringing activity.

## COUNT I: Infringement of U.S. Patent No. 11,689,787 by Fleetmind Seon

84.     Hayden restates, realleges and incorporates each of the preceding paragraphs as if fully set forth herein.

85.     Fleetmind Seon has infringed and continues to infringe, directly and/or indirectly, at least claim 1 of the '787 Patent.

86.     For example, upon information and belief, in violation of 35 U.S.C. § 271(a), Fleetmind Seon has infringed and continues to infringe at least claim 1 of the '787 Patent by importing the Interior Bus Camera Assembly into the United States.

87.     Additionally, upon information and belief, Fleetmind Seon, through its United States sales agent, Seon US, has offered and continues to offer for sale the Interior Bus Camera Assembly. Upon information and belief, Seon US operates as Fleetmind Seon's sales agent for the Interior Bus Camera Assembly and related ClearLane system.

88.     As explained above, Fleetmind Seon, together with Safe Fleet, Seon US, Seon Systems, and Coban, designed and developed the infringing Interior Bus Camera Assembly. Upon information and belief, Fleetmind Seon directs and controls operations and activities relating to the development and importation of the infringing Interior Bus Camera Assembly.

89.     Upon information and belief, Fleetmind Seon has represented to at least one Canadian government entity that it developed and offers for sale the interior LPR camera technology that is marketed under the Safe Fleet Company Group banner. Fleetmind Seon is the assignee to U.S. patent applications and registered trademarks relating to the interior LPR camera technology marketed under the Safe Fleet Company Group banner.

90.     Upon information and belief, as owner of the intellectual property relating to ABLE technology offered for sale under the Safe Fleet Company Group banner, Fleetmind Seon directs Seon US to sell the Interior Bus Camera Assembly as its agent in the United States.

91.     Further, upon information and belief, Fleetmind Seon, Seon Systems, and Seon US share employees, including those with signatory authority for Seon US (*e.g.*, Susan Gill, VP Finance at Seon US).

92.     In the alternative, Fleetmind Seon has contributed to and is continuing to contribute to the infringement of at least claim 1 of the '787 Patent in violation of 35 U.S.C. § 271(c) and/or § 271(f). The components are provided at least to Safe Fleet, Seon Systems, Seon US and/or Coban who make, use, and/or offer for sale the Interior Bus Camera Assembly and related ClearLane System.

93.     On information and belief, these components are material to the Interior Bus Camera Assembly and are, accordingly, material parts of the invention covered by the '787 Patent. Additionally, on information and belief, these components are specially made or adapted for use

in the '787 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

94.     As explained above, the Interior Bus Camera Assembly and related ClearLane System meet all the limitations of at least claim 1 of the '787 Patent. Accordingly, Safe Fleet, Seon Systems, Seon US, and/or Coban directly infringe the '787 Patent by making, using, and/or offering for sale the Interior Bus Camera Assembly and/or related ClearLane System.

95.     On information and belief, Fleetmind Seon, Safe Fleet, Seon US, Seon Systems, and Coban knew of the '787 Patent since at least July 2023. For example, employees of Fleetmind Seon and Safe Fleet, Coban, Seon Systems, and/or Seon US emailed about the '787 Patent in July 2023, and, upon information and belief, expressed concern that the Interior Bus Camera Assembly and/or related ClearLane System infringed the '787 Patent.

96.     Further, in violation of 35 U.S.C. § 271(b), Fleetmind Seon has induced and is continuing to induce infringement of at least claim 1 of the '787 Patent by assisting, encouraging, instructing, and/or directing Safe Fleet, Seon Systems, Seon US, and/or Coban to make, use, and/or offer to sell the Interior Bus Camera Assembly and/or related ClearLane System. For example, on information and belief, Fleetmind Seon has provided Seon Systems, Coban, Safe Fleet and/or Seon US with the Interior Bus Camera Assembly, or components thereof, with no substantial noninfringing uses.

97.     On information and belief, Safe Fleet, Seon Systems, Seon US, and/or Coban use the Interior Bus Camera Assembly in testing procedures. On further information and belief, Fleetmind Seon instructs or directs Safe Fleet, Seon Systems, Seon US, and/or Coban to assemble and use the Interior Bus Camera Assembly in an infringing way.

98.     Moreover, Fleetmind Seon continues to willfully infringe the '787 Patent at least because it knew, should have known, or was willfully blind as to the existence of the '787 Patent, and knew its actions constituted infringement. On information and belief, Fleetmind Seon, Seon Systems, Coban, Safe Fleet and/or Seon US sought the opinion of counsel regarding their infringement of the '787 Patent but chose to proceed with development of the Interior Bus Camera Assembly without obtaining an opinion, in reckless disregard of the '787 Patent.

99.     As a result of Fleetmind Seon's infringement of the '787 Patent, Hayden has been damaged and will continue to suffer damages in the future. Hayden is entitled to recover for damages, including in the form of lost profits and/or a reasonable royalty sustained as a result of Fleetmind Seon's wrongful acts in an amount yet to be determined and to receive such other and further relief, including equitable relief, as this Court deems just and proper.

100.    Hayden will be substantially and irreparably damaged and harmed if Fleetmind Seon's infringement of the '787 Patent is not enjoined, including because Fleetmind Seon, together with and/or through Safe Fleet, Seon US, Seon Systems, and/or Coban, competes with Hayden in government contract bids related to automated bus lane enforcement technologies.

101.    On information and belief, Hayden alleges that Fleetmind Seon's infringement of the '787 Patent, either literally or under the doctrine of equivalents, has been and continues to be deliberate and willful.

## **Jury Demand**

Hayden hereby demands trial by jury on all issues so triable.

## **Prayer for Relief**

WHEREFORE, Hayden respectfully requests the following relief from this Court:

A.  A judgment that Fleetmind Seon has infringed one or more claims of the '787 Patent;

B.  A judgment awarding Hayden damages adequate to compensate for Fleetmind Seon's infringement of the '787 Patent, together with any pre-judgment and post-judgment interest as allowed by law, costs, and other damages permitted by 35 U.S.C. § 284;

C.  A judgment permanently enjoining Fleetmind Seon and its officers, agents, employees, and attorneys, and those who are in active concert or participation with them (including Fleetmind Seon's affiliates within the Safe Fleet Company Group) from further infringement of the '787 Patent;

D.  A judgment finding that Fleetmind Seon's infringement of the '787 Patent was deliberate and willful;

E.  A judgment awarding Hayden enhanced damages in an amount treble the above-requested damages award or otherwise increased over and above said award as determined appropriate within the Court's discretion, pursuant to 35 U.S.C. § 284;

F.  A judgment finding that this is an exceptional case and awarding Hayden its reasonable expenses, costs, and attorneys' fees in accordance with 35 U.S.C. § 285 and/or as otherwise provided by law;

G.  An award to Hayden of such further relief at law or in equity as this Court deems just and proper.

May 15, 2025                                  WHITE & CASE LLP


                                             */s/ J. Travis Underwood*


                                             Yar R. Chaikovsky
                                             yar.chaikovsky@whitecase.com
                                             David T. Okano
                                             david.okano@whitecase.com
                                             Andy LeGolvan (*pro hac vice* forthcoming)
                                             andy.legolvan@whitecase.com
                                             3000 El Camino Real
                                             2 Palo Alto Square, Suite 900
                                             Palo Alto, CA 94303
                                             Telephone: (650) 213-0300

                                             WHITE & CASE LLP
                                             Alexandra J. Cho (*pro hac vice* forthcoming)
                                             alexa.cho@whitecase.com
                                             1221 Avenue of the Americas
                                             New York, NY 10020
                                             Telephone: (212) 819-8200

                                             WHITE & CASE LLP
                                             Ethan Plail (*pro hac vice* forthcoming)
                                             ethan.plail@whitecase.com
                                             701 Thirteenth Street NW
                                             Washington, DC 20005-3807
                                             Telephone: (202) 626-3600

                                             J. Travis Underwood
                                             Texas Bar No. 24102587
                                             GILLAM & SMITH, LLP
                                             102 North College Avenue, Suite 800
                                             Tyler, Texas 75702
                                             Telephone: (903) 934-8450
                                             Facsimile:  (903) 934-9257
                                             Email: travis@gillamsmithlaw.com

                                             *Attorneys for Plaintiff Hayden AI Technologies, Inc.*